UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:19-CR-20252-SMITH

**UNITED STATES OF AMERICA,**
     **Plaintiff,**

vs.

**GREGORY GEORGE,**
     **Defendant.**
                                                   /

### SENTENCING MEMORANDUM and
### MOTION FOR DOWNWARD VARIANCE

The defendant, Gregory George, through undersigned counsel, files this Sentencing Memorandum and Motion for Downward Variance in advance of his sentencing hearing. Mr. George respectfully requests that the Court impose a sentence of time served, which is the equivalent of just over 60 months. A sentence of time served is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in Title 18 U.S.C. § 3553(a), after considering of the following factors:

### Procedural Posture and Facts

On January 17, 2020, Mr. George pleaded guilty to one count of conspiring to distribute a controlled substance, knowing and intending that the controlled substance would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959(a)(1) and (a)(2); and 21 U.S.C. § 963. [ECF No. 1 and 32]. His sentencing is currently scheduled for June 9, 2020. [ECF No. 44].

In June of 2015, Mr. George was working as a stevedore at the Port Varreux

1

in Port-au-Prince, Haiti. Mr. George was also working for a Haitian drug trafficking organization (DTO) that operated out of the Port Varreux. Members of the DTO came to believe that Mr. George was cooperating with law enforcement and ordered that Mr. George be assassinated. On June 2, 2015, there was an attempted assassination of Mr. George, which resulted in the death of Mr. George's friend. Terrified, Mr. George surrendered to Haitian law enforcement immediately. Haitian officials arrested Mr. George and charged him in connection with the drug trafficking offense. He was detained.

On June 7, 2015, a confidential source (CS) contacted the United States Drug Enforcement Agency (DEA) regarding the assassination attempt. The CS told the DEA that the leader of the DTO had ordered the assassination of Mr. George, and he paid local law enforcement to execute the assassination. The DEA immediately made contact with Mr. George at the local prison. Mr. George agreed to provide the DEA information on the drug trafficking organization and its operation.

Mr. George was imprisoned at Croix de Bouquet prison in Haiti, while cooperating with the DEA, for nearly four years. Mr. George was the target of multiple attempts on his life during that time. After a final attempt, the government determined that Mr. George would need to be extradited in order to protect his life. A grand jury returned the indictment on April 30, 2019. [DEA 1]. Mr. George was extradited 4 days later.

Mr. George acknowledges the gravity of his actions and he does not seek to minimize his wrongdoing or deflect blame. However, he does respectfully ask the

Court to fashion an appropriate sentence, one that takes into account the conditions at Croix de Bouquet prison; and his assistance to the government. After consideration of those factors, along with the § 3553(a) factors, Mr. George asks the Court to impose a sentence of time served.

## Conditions at Croix de Bouquet Prison

Upon his surrender in June of 2015, Mr. George was incarcerated at Croix de Bouquet prison in Port-au-Prince, Haiti. During the four years that Mr. George was at Croix de Bouquet, he was subjected to appalling conditions. The conditions were atrocious for every prisoner. However, because of Mr. George's cooperation with the Haitian and United States governments, his time in the prison was substantially worse.

In its annual summary on country-by-country human rights practices, the United States Department of State concluded in 2017 (during the time that Mr. George was imprisoned) that prisons throughout Haiti were overcrowded, poorly maintained, and unsanitary.[1] Inmates slept in shifts due to lack of space. Some cells had no access to sunlight and there was not adequate ventilation. Many prisons lacked basic services such as plumbing, sanitation, medical services, potable water, electricity, or lighting. Id. International observers indicated that prisoners suffered from a lack of basic hygiene, malnutrition, poor health care, and water-borne illness. Prison officials did not allow prisoners outside of confinement because of poor security

---

[1] https://www.state.gov/reports/2017-country-reports-on-human-rights-practices/haiti/

3

and severe understaffing. Id.

In 2016, the Commission on Human Rights appointed an independent expert from the United Nations to conduct a review to assess the situation of human rights in Haiti. Specifically regarding Croix de Bouquet, the expert found that the prison was overcrowded by 50% and that cells designed to accommodate a single person were often housing 12 people.[2] Family visits in the prison were suspended in September of 2015 because of a lack of public order and public demonstration in the prison. Id.

For Mr. George, the conditions were even worse than for the average prisoner at Croix de Bouquets. Significant corruption within the prison system meant that the guards who were supposed to be keeping order and protecting the safety of the inmates were often involved in the assassination attempts on Mr. George. During his time at Croix de Bouquet, Mr. George was attacked with knives on multiple occasions, leaving significant scarring on his face and torso. On some of these occasions, it was clear that the guards were involved—either by providing the weapon to another inmate, or by allowing another inmate access to Mr. George, who should have been in protective custody. During one attempt, Mr. George was in a transport van when the van was filled with poisonous gas. During another attempt, another inmate attacked Mr. George with a straight edge razor, scarring him. An investigation revealed that the head of Croix de Bouquet prison likely provided the attacking inmate with the razor.

---

[2]   https://www.haitilibre.com/en/news-16768-haiti-justice-gustavo-gallon-dissatisfied-with-the-prison-of-croix-des-bouquets.html

Mr. George's life was constantly in danger for the first four years of his imprisonment. Like other inmates in Haiti, Mr. George was at risk based on the atrocious conditions. But Mr. George was also in constant fear of death—and often, he was in actual physical danger of death. Enemies constantly surrounded him—between inmates who were part of, or being paid by, the drug trafficking organization; and the guards, who were on the drug trafficking organization's payroll. While there is no way to quantify a day in Croix de Bouquet compared to a day in a United States federal detention center, it is clear that the four years that Mr. George spent at Croix de Bouquet were significantly harsher than had Mr. George spent that time in custody in the United States.

## Assistance to the Government

Mr. George began cooperating with the DEA immediately and his assistance has continued for the last five years. He spent four years providing information to the DEA and the United States government about the people involved in the drug trafficking organization; the methods used to traffic drugs; and specific information about the massive drug shipment involving the Manzanarez. [PSI ¶ 18, 19]. He identified and provided information about the head of the organization, a politically connected and powerful man, and numerous co-conspirators.

Despite the numerous attempts on his life as a result of his cooperation, Mr. George continued to provide information to the DEA. Upon his extradition to the United States, Mr. George immediately notified the government that he would continue his cooperation. To that end, he has continued to meet with the prosecutor

and with DEA agents while in the United States.

Mr. George's co-conspirators, many of whom are significantly more culpable than Mr. George, have not yet been indicted. Therefore, the government is not in a position to file a formal motion to reduce Mr. George's sentence based on substantial assistance. However, Mr. George's information has been completely truthful, has been relied upon by the DEA, has assisted in the obtaining of additional evidence against his co-conspirators, and will continue to be useful in the future. Because it is unclear at this time whether Mr. George will benefit from this assistance, he asks the Court to consider this factor, at this time, in determining an appropriate sentence.

## Conclusion

Mr. George understands the gravity of his circumstance and he does not seek to minimize the severity of his actions. However, he does ask the Court to consider the conditions of Croix de Bouquet prison, where he spent four years, as well as his assistance to the government, in determining an appropriate sentence. In applying those factors to the considerations under 18 U.S.C. 3553, Mr. George asks that this Court sentence him to a period of time served.

>   **Respectfully,**
>   **MICHAEL CARUSO**
>   **FEDERAL PUBLIC DEFENDER**
>
>   By:   /s/ *Lauren Field Krasnoff*
>   Assistant Federal Public Defender
>   Florida Bar No.: 86951
>   150 W. Flagler Street, Suite 1700
>   Miami, Florida 33130-1556
>   Tel: (305) 533-4255
>   Fax: (305) 536-4559
>   E-mail: lauren_krasnoff@fd.org

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on June 2, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                /s/ *Lauren Field Krasnoff*